Thank you very much. We'll call the matter of American Resort Development Association v. Government of the Virgin Islands. Mr. Hittinger. Good morning, Your Honors. May it please the Court, my name is Carl Hittinger of the Baker Hostetler Firm, and I'm representing the appellants in this appeal. Your Honor, I'd like to reserve seven minutes for rebuttal. Granted. Thank you. This appeal calls on this Court to decide whether the U.S. Virgin Islands a territorial possession. They pass a discriminatory tax that, according to its legislative history, targets and is borne over 99% of the time by non-residents. The issue before this Court is whether the District Court erred in ruling as a matter of law that the timeshare tax does not violate the Commerce Clause based on either effect or intent. Let's start, as we should, with the text of the legislation itself, with the text of the statute. Is the timeshare tax as set forth in the overall structure not facially neutral? Yes, the timeshare tax, as drafted, does not on its face indicate discrimination, and therefore, it is facially neutral. Our position is that, in effect and in intent, it is discriminatory. And as Your Honors are well aware, the Supreme Court has, for decades, found that what a statute says is not what a statute does in terms of effect and intent. So this appeal is about that, the effect and intent of the statute, not so much what the statute actually says on its face. Now, your friend across the aisle there, virtually, on page 11 of its brief said, we could find no case invalidating a tourism tax as impermissibly discriminatory under the Commerce Clause. And they point out that, if the opposite were true, all such taxes, hotel occupancy taxes, rental car taxes, airport taxes, etc., would be unconstitutional. Do you have any cases that would refute that statement? Well, there are no, as far as we know, any cases involving a timeshare tax. There are a whole panoply of cases, as you know, dealing with various taxes of different kinds, rental taxes, parking taxes, airport taxes, all sorts of things like that. How about hotel occupancy taxes? There are cases that deal with that issue, yes. Well, now, but do any cases go in your direction with respect to, for instance, hotel occupancy taxes? We have not cited any cases on that point. We've cited more fundamental, basic cases that say, whatever the context, that if a statute is passed that is neutral and does not have the effect of discriminating against non-residents, then it is constitutional. So there are many, many cases where entities, cities, states have tried to pass taxes that have the effect of hurting, discriminating against non-residents, and those cases are all cited in a brief. They're mostly Supreme Court decisions of various types. And that's the basis of our position. The standard of review for this Court is plenary, but most importantly, we think that the standard of review for these kinds of taxes that are discriminatory, these tailored taxes, is very high. The Supreme Court has said in complete order that it requires careful scrutiny. The Court also said in the chemical waste case, the Supreme Court, that they're typically struck down without further inquiry. And this Court said in Norfolk Southern that it's virtually a per se rule of invalidity. Why don't you just refer to complete auto? Would you walk us through, if you will, how this tax does or does not meet the complete auto test? And before you get to that, I should have mentioned this at the outset of your presentation. You are here and have been counsel for ARDA throughout, correct? But are you here representing on appeal both of the plaintiff appellants? We're representing individuals as well as the association, yes. Right. The reason I ask that is because I seem to recall, and you can correct me if I'm wrong, that there was a variance in the approach of the two appellants in attacking the tax with respect to the four components, if you will, of the complete auto test. I believe you had challenged specifically number three, the discriminatory aspect. The other three portions of that test had been attacked by the other appellant, by Great Bay, if I recall. But in any event, are you taking on all four right now or only number three? We're only taking on number three, and I believe my co-appellant is only taking on number three. All right. I may be incorrect in my memory, or that may be a shift in approach. But if you would then indicate how number three is violated here. Let me start with the issue of effect. And as you know, the Supreme Court, I guess the best case on this issue would be Maryland versus Louisiana in the 1981 case, where the Supreme Court said it's the effect of the statute that has to be examined carefully, not just what the statute actually says. And therefore, the practical application of the statute when put into place, as the court says, the court is not bound by the name, description, or characterization of the legislation. It looks at the practical impact of the law. In this particular case, we have a near proxy that this statute is aimed at non-residents. Ninety-nine percent of the timeshares are owned by non-residents. Well, now, your choice of the word aimed at suggests intent as opposed to effect. Yes. That is the other argument we're making, that it has both effect and intent. In this case, in that sense, is much different than other cases, including the Montana Edison case, where there wasn't the intent. We have in this record, which is undisputed, because as you know, it was decided on an undisputed factual record. Our expert's report, which is in that record, was not disputed. That is part of the record in which the district court determined. But that record shows that in this case, the legislature and the governor, the former governor Mapp, passed this legislation and said, both publicly and in legislative history, that it was targeted at external sources, visitors to our shores, tourists, and not residents of the Virgin Islands. That was the purpose of passing it, to put the tax on out-of-state residents. They were quite clear about that. So this record, which is undisputed about intent, is probably much better than most of the cases that are cited in our brief, where that intent was not part of the act, right? Yes, this legislation came from the government to the legislature. Well, he proposed, but he has no authority to actually enact the tax. So if intent is indeed critical here, isn't it the intent of the legislative body we should be looking to, rather than the intent of the governor who merely proposed the legislation? Yes, we should look to that. And the legislature's, the Senate sponsors of this legislation said that the bill was targeting welcome visitors to our shore and timeshare owners. All right. So the target, those discriminated against are people, right? Not a particular form of commerce, but people. Not a particular market, but people. Is that an accurate summarization, if you will, of your position? Yes, timeshare owners, which could be people, could be corporations who act in interstate commerce with those timeshares. Wasn't there originally a privileges and immunities clause challenge in this case? There was. Why did you drop it? Why did you not pursue it on appeal? We felt that the strongest argument that we've raised is the argument of discrimination under Big Auto. Okay. Of course, free to use any argument you want on appeal, but we think that's the strongest argument we have, to be honest with you. No, no. We'll look to you to focus the argument, Mr. Edensheer. Go ahead. So your honors, to get back to your question, Chief Judge Smith, the case here that, well, first let me say the district court erred as a matter of law in making its finding that there was no discrimination, because what the district court said was that effect, I'll read it, whether that effect, whether that is the effect is not relevant to the court's inquiry for commerce clause purposes. That was a finding of the district court. That is wrong as a matter of law. What the district court is basically saying, and what I think my opponent's saying, is that if the statute on his face doesn't show discrimination, it's not discriminatory. And that is just contrary to Supreme Court precedent. That effect has to be considered by the court. Now, whether there's evidence of effect and whether there's evidence of intent, that's another issue. We think in this case, there is clear evidence of both in the record. That's undisputed. And the other point we would like to make is why is this so important that it's aimed at non-residents and why is that discrimination a problem? It's a problem for this reason. In the Virgin Islands, like many, you know, resorts, vacationers can rent timeshares. They can also rent apartments and condos and private houses like we do down in the shore in New Jersey and other places. Those entities compete against timeshares. Those entities are as taxed as passed, has a competitive impact on these timeshare units, making them really uncompetitive by raising the price per week of $175 a week, the $25 a day timeshare tax. Are you saying that has a constitutional dimension to it or are you just telling us a fact? It's a fact that has a constitutional dimension because it shows the reason, the intent, and the effect behind the statute has harm, discriminatory harm. We don't have to necessarily show that, but in this particular case, that is what we have. And our expert is opined on that and that's not being challenged. But rentals of other forms of property, vacation property, in fact, are also taxed, right? Hotels, condos, they're subject to a 12.5% tax, aren't they? They are, as were timeshares, the millage tax, even before this tax. In fact, timeshares were the highest tax of all those. But what they're not taxed for is this timeshare tax. They're not paying this additional $25 a day. So it's the differential. It's the differential between 12.5 across the board and 12.5 plus 25. Exactly. Counselor, as I recall it, and you can correct me if I'm wrong, but I think this is brought up first time in your reply brief. Is this argument about the difference between owners of condos and apartments and is that something that's been preserved? Yes. It was in our expert report, which is at the appendix at 140. It was raised to the district court. District court did not address that because they said the effect was irrelevant. It came up in appeal with the judgment. The reason it's mostly in our reply brief is because the appellee in their responsive brief raised this protectionism argument and said that the statute is not protecting residents. That's the argument they're making. They're relying on the Norfolk Southern case primarily. And that's why we put that evidence in there, refute that argument that yes, indeed, it is protectionism. Since you're still on the dormant commerce clause argument, perhaps you can deal with Commonwealth Edison. I mean, there was an outsized impact on out-of-staters. 90% of the coal left the state. Why shouldn't we apply just that case and affirm? That's a good question. And that's exactly what the district court did, I exclusively relied upon that case. So looking at the Edison case, what happened in Edison was they decided in Montana that they were going to tax coal, all coal, to whether it was a resident who bought the coal or a non-resident who bought the coal. So that coal tax was applied across the board, both on its face and its effect, and there was no intent in their evidence to the contrary. And therefore, the Supreme Court said there's no discrimination because it's equally applied to both residents and non-residents. Now, as I said, one of the facts is that 90% of the coal went to out of, it went out of state. And so it may have had an outside effect on, outsized effect on outsiders. How is that not like this case? I think the Montana case would be like this case, if I give you a hypothetical situation. We're all Pennsylvanians, so we know about coal, there's bituminous coal and there's anthracite coal, okay? Suppose in Montana, residents used anthracite coal and out-of-state residents used bituminous coal, and the tax was only on bituminous coal. So if you use the anthracite coal, you'd benefit because you wouldn't be paying the tax and that would be going to the advantage of the residents. That's what we have here. They're imposing a tax that doesn't hurt residents, it only hurts non-residents by its effect and by its intent. If here, the tax had been applied to not only timeshare owners, but also condo owners, apartment owners, other rental properties, and they applied it across the board, like you did in the Edison case, then it would not be discriminatory. It would be consistent with that case. That's not what happened. That was not the effect or intent. So in Montana, they didn't have evidence of intent, they didn't have any events of effect in the way that we've talked about in this case. Judge Mady, would you like to get in here? Thank you, Chief. I think it's important that the record reflect that two-thirds of the panel is actually from New Jersey. You had us with the shore rental analogy, but coal starts to get really tough for us. But one-third of the panel is from coal country. Bituminous, actually, around here, but Judge Mady's point is well taken. Counsel, a question on the court's jurisdiction and the prudential principle of abstention and the tax comedy doctrine. Why should we consider this case at all, given that this is largely a commercial matter, there's no fundamental right at issue, it's largely about the competitive play between participants in the rental market, and there is an adequate procedural remedy in the territory. So why should this court become involved? Well, starting with your last point, there is no adequate procedural remedy in the territory. District Judge Gomez found on the record that he did not believe under the Tax Injunction Act, which he said would not apply here, because the Virgin Islands is not a state, it's a territory. He said that there was not a just and expedient procedure in the courts of the Virgin Islands. And that issue would be an issue of discretionary review by this court. But most importantly, that issue wasn't appealed. The whole Tax Injunction Act issue that was raised in the appellee's brief was never cross-appealed, never raised on appeal in this court. Under 28 U.S.C. 2107, therefore, this court has no jurisdiction to decide the issue of the application of the Tax Injunction Act, whether or not it applies to the territory or not, or whether or not there's a just and expedient resolution. They just waived it. It wasn't raised, it could have been raised, wasn't for us to raise, because we won that issue in the district court. So that's why it should be there. As far as comity goes, comity only applies to the states. It's a federalist, issue. The Virgin Islands is not a state, they are a territory. They don't get any different rules than states get, and it doesn't apply to the states, and no court's ever held that. That's our position on comity. All right, Mr. Hittinger, given the length of time you reserved for rebuttal, we have exceeded the amount of time that has remained to you. But if you'd like to make a brief final comment before we hear from Mr. Eaton, and with a view toward the fact that you have seven minutes rebuttal time reserved, anything else you would like to say? No, Your Honor, I think I've covered all the issues. If there's any more questions, I can answer them in rebuttal. All right, thank you very much. Mr. Eaton? Mr. Eaton, you are muted. I think I am now unmuted. Can you hear me? Yes. Okay, thank you, Your Honor. Jeffrey Eaton for the Virgin Islands. Your Honors, I'd like to... Commerce Clause questions can be a bit of a quagmire. Mr. Eaton, we're continuing to have some difficulty. We hear you, and you're no longer muted, but at least to my ear, it's darn close to it, to being muted. Is there a way you can get closer to the microphone device? I will try, Your Honor, although it might require my putting my face uncomfortably close to the screen. I apologize for that. No one looks good this close up. No, we don't want you to be uncomfortable, and I think that's a little better already. Can you, if you can, I'll try to speak up as well. Can you hear me adequately now? I can, thank you. Others on the panel? I can hear you fine. Just belt it out. Thank you, Your Honor. That's more Jersey talk, see, belting it out. Your Honors, I think the Commerce Clause question in this case is actually pretty straightforward for reasons that Your Honors got at in your questioning of my colleague across the way. It's hornbook law, Your Honors, that the essence of a discrimination claim in this context is just showing that the challenge tax advantages an in-state commercial interest in relation to an out-of-state commercial interest that competes in the same market. That's from Norfolk Southern. It could have been from any of a dozen Supreme Court cases. It's absolutely clear that a mere deferential impact on out-of-state interest is not sufficient. You have to show that there is an advantage given, either in purpose or effect, to a local commercial interest. And the plaintiffs simply haven't shown that, Your Honor. The first time that they've tried to really even articulate what interest that is, is in their reply brief. They didn't mention it at all in their initial brief. And that's this notion that the tax is unfair because timeshare owners compete in a rental market. And because others who compete in that market don't pay the tax, they are disadvantaged in violation of the Commerce Clause. So is your argument that that's been forfeited? I suggested that to your adversary. Your Honor, I think it has, although I'm not going to rely on that. I'm happy to explain to you why it's wrong. I do think that generally when you raise, I mean, the notion of having a disparately impacted local commercial interest is a matter of law relevant to this issue. They needed to raise that in the opening brief, and they didn't. However, I'm happy to address the merits because I don't think they're that difficult. Sure, go ahead. So the first problem is they seem to be arguing that the local commercial interest, is owners of other kinds of property called condominiums, homes, who also rent out their units, right? And the argument is, well, they don't pay the timeshare fee. Therefore, they are at an advantage relative to us as an out-of-state timeshare owner. But the factual premise of that argument is wrong. The record shows quite plainly that timeshare owners who rent are treated exactly the same as condo owners who rent. You have to understand, and we didn't get into this in our brief because it wasn't raised in theirs, but you have to understand how this timeshare taxes apply. The record shows that if I, as a timeshare owner in the Virgin Islands, go down there for my week and I stay seven nights, I pay timeshare tax for seven nights. I do not pay hotel occupancy tax. If I rent my unit to someone else for money, that rental is not assessed as a timeshare tax. It is assessed only hotel occupancy tax. You never pay both, okay? And even moreover, the hotel tax in most cases is higher than the timeshare fee. It's 12.5% of the room rate. And I can tell you from experience that in season, I think $200 is the crossover point there. Almost any rental in the Virgin Islands is going to cost more than that. The hotel occupancy tax actually is higher. So in that instance, there's really no disparate treatment between timeshare owners and condo. There's a number of other problems with that argument. One is that there's no evidence in the record that any plaintiff in this case ever rented out their unit. There's just no evidence about that, nevermind about what they paid or whether they were disadvantaged. So if that's the argument, there's no evidence to support it, and they probably don't have standing to bring it. And third, if the local interest that's being disfavored, excuse me, favored here is owners of rentable real property, well, there's no evidence in the record of who those owners are. If you're going to show up an impermissible burden based on an advantage given to a local interest, it has to be a local interest. There's no evidence in the record to tell us whether people who own condos that rent them in the Virgin Islands are mostly residents or mostly non-residents. For all we know, they may be 99.5% non-residents. They would have to show that to make a cognizable discrimination claim in this context. So I think, I mean, honestly, I think that disposes of the Commerce Clause issue. They haven't shown, well, at least of effect, and I'll get to purpose in a second. They haven't shown differential treatment in the market that they've identified. And if they don't do that, there can't be discrimination. Purpose is essentially subject to the same problem. As one of your honors pointed out, even if you assume for a moment that Governor Matt's statements, both in submissions to the legislature and elsewhere, that the tax is intended to fall on visitors to the territory and on tourists, there's nothing wrong with that for Commerce Clause purposes, right? It is perfectly okay, the Supreme Court has said many times, that interstate commerce has to pay its way. People who come to the territory can be taxed. And people, the general taxpayer of the Virgin Islands is not a commercial interest who is competing with timeshare owners coming from outside the territory. There's no, those are not interests who are competing in the same market, making any differential treatment between them irrelevant for Commerce Clause purposes. So I don't think I need to address that any further. If your honors don't have questions about that issue, I'm happy to address the Tax Injunction Act. You're free to do so. I have no other questions. Judge Maney, Judge Chigares? Nothing on that. Thank you. Very briefly, your honor. I don't want to go long here. But to address a couple of things that opposing counsel raised, the Tax Injunction Act is a question of subject matter jurisdiction. It has, it cannot be waived, and it has to be addressed when it's raised. We could have filed cross appeal for this purpose, but we didn't have to. Once subject matter jurisdiction is put in issue, the court has to resolve it. So I don't think there's a waiver problem. There may be, I will concede on the comity issue, which is not technically subject matter jurisdiction, even though it's essentially identical to the Tax Injunction Act in its application. So I don't think it really matters. But I do think the Tax Injunction Act issue is before you. And on that issue, your honor, this is something that has been coming up in this court for 40 odd years, starting with the Pan Am case many, many years ago. And the essence of the argument at this point, which we've raised before, to some effect, is that the basis for not applying the Tax Injunction Act to the Virgin Islands, as given by this court in Pan Am in the 1970s, no longer applies. The Tax Injunction Act is essentially, and the Supreme Court has said this, is essentially designed to make sure that federal courts aren't interfering in the assessment and collection of local taxes. It's a sort of federalism, kind of comity kind of issue. That's what the statute is intended to do. And what Pan Am said as well, at that time, the federal court in the Virgin Islands had unusual jurisdiction. It did not have Article III jurisdiction, per se. It had a combination of Article III jurisdiction and local jurisdiction. You could hear local cases in that court as well, concurrently within the local courts. And the tax that was challenged in that case was, in fact, a congressionally enacted tax under 48 U.S.C. 1401, which applied to local property. So, if the Tax Injunction Act is primarily about not having federal courts interfere with local taxes, well, in Pan Am, you had a not really federal court applying, declining to apply the doctrine to a not really local tax. So, it's understandable that the court in that circumstance said, well, the Tax Injunction Act... Counselor, can I just interrupt on this point? Because I appreciate what you're saying. The when an efficient remedy may be had in the course of such state. So, putting aside the rationale you're offering, and I certainly follow it, how do you address that language? Your Honor, as you probably have encountered in various Virgin Islands cases over the years, the U.S. Code, including Title 28, is not at all consistent in how it uses the term state. It sometimes defines state to include just the 50 states. It sometimes defines state to include the 50 states, the District of Columbia, and Puerto Rico, and once in a while, it also adds the insular territories to that formulation. Different parts of the Judiciary Act define state specifically. This particular statute is not subject to any of those definitions. So, we are left to consider for ourselves what state means in that context. But isn't the point that we've already done that? I mean, are you asking us to overrule our Pan Am Bluebeards Castle and the Byrne decision? Well, I don't think you will. For Bluebeards Castle, I think it's dicta in that case. The issue wasn't raised by the parties. But the others, I mean, Pan Am, I guess it's technically an overruling, but it's really a change in intervening. That's a superfluous. It's intervening change in law, Your Honor. Because the rationale that the court gave no longer applies, it is rational to reach a different outcome here. So, if that requires overruling Pan Am, then I think that's the appropriate thing. Just follow through. What's the change circumstance that means we should not follow it? So, there's two, Your Honor. The change in the jurisdiction of the Virgin Islands District Court in 1984 gives it essentially parallel jurisdiction to an Article III court. And the other basis for the Pan Am decision was 48 U.S.C. 1401, which evidenced an intent by in the Virgin Islands. That was rescinded in 2007, two years after the Bluebeard decision. So, with neither of those things currently in effect, the rationale for not applying the Tax Conjunction Act to the Virgin Islands just doesn't exist. You now have a decidedly local tax. Congress had no involvement in passing it. You have a court that is entirely an Article III court for civil purposes, so there's none of this local federal overlap. And this court, I think, has said, and I regret that I don't have chapter and verse on this, but as the territories, including the Virgin Islands, have developed and become more autonomous over time, comity principles do apply in some measure to the territories and to the Virgin Islands in particular. Perhaps not to the same extent as the state, but increasingly so because of the fact that the constitutional status of the territory is conceivably somewhat different from that of the state. Substantively, the way the territory is currently treated by Congress and by jurisprudence in general suggests that it should be treated like a state for this purpose because it is treated like a state for, I mean, as the Senate report rescinding 1401 said, like, this is a local issue. It's a Virgin Islands issue. We don't need to be involved. This is not a federal issue. Didn't we, at least in our Byrne decision from 2009, at least assume that the Tax Injunction Act might apply to local property taxes? You did, Your Honor, and you didn't. The sort of gestalt of the opinion is that it probably does apply, and you assume that it did, but didn't ultimately reach the issue because you didn't have to. We are arguing that you should reach that issue here and essentially reach the same result that you tentatively reached in Byrne. Okay. Your Honor, if you have nothing further, I'll see the rest of my time. I have nothing further. Colleagues? I think we're all set. If not, thank you very much, Mr. Eaton, and we will return to Mr. Hittinger for rebuttal. Thank you, Your Honor. Let me start with the Tax Injunction Act in which the Virgin Islands is asking this court to do today, which is quite traumatic, to find that the Tax Injunction Act would apply to the Virgin Islands, who's not a state, to apply even though this court in two panel decisions, both in Pan Am and Bluebridge Castle, found that it does not apply. This panel, with all due respect, would not have the power to overrule the decisions of those other panels unless it was an en banc review of those decisions. Judge Geras, you point out in the Byrne case, there was a presumption that it might apply, but I think the most important thing that was said in Byrne and said in other cases, this is an issue for Congress. Again, with all due respect to this court, this is an issue for Congress to determine, and Congress has determined this recently in the case of Puerto Rico. They passed a statute, 48 U.S.C. 1401, that says that the Tax Injunction Act does apply to the Puerto Rican territory. They didn't include the Virgin Islands. They knew about your decision, obviously, in Pan Am. They could reach that. They decided not to. Therefore, this court really has to defer to Congress to determine what they want to do with their territory, whether they want this act to apply or not to apply, and they have not done that. So, frankly, the court doesn't have the jurisdiction to do that or the ability to do that, particularly as a panel, unless the court en banc would reach that ruling. On a further point, Judge, maybe you asked me about comedy. The case that applies on that, your question of whether comedy applies to territories, is Pan Am as well, a 1972 decision where the Third Circuit said that comedy does not apply to territories. I was quite clear about that. Again, that's a panel decision that you would have to follow if it was a presidential decision, unless the court en banc would want to change that. Moving to the Commerce Clause, I hear, with all due respect to my opponent, a new standard being proposed here, which I think was lurking in their brief, that somehow there's a standard of a balancing test that needs to be applied using kind of a Pike or a Wayfair case analysis, that if there's discrimination, discrimination's okay, as long as there's a justifiable reason for it. I think this court- No, nobody has even invoked Pike in this case, have they, including the district court? I think in the supplemental authority letter that Pelley submitted to this court, they raised that when we're talking about the Reefco decision that you were on the panel on. Right, I was. I don't recall even seeing in the table of cases that Pike appeared in the briefing, but I may have missed something. It's not in the briefing. It really was invoked in that letter, and that is not the law. This is not a balancing test. The Supreme Court made it clear that, as we said in the beginning, it's a heightened standard. It's almost a per se rule that there's discrimination, end of story. There's no justification for discrimination in any context, let alone in the tax context. In the Hawaii case, where they were dealing with Hawaiian wine, nobody found, the Supreme Court didn't find that, well, Hawaii has the right to protect its wine, even though that may hurt out-of-state residents. They said, no, it's discriminatory. You can't do it, period, end of story. So I don't think that testifies here. As far as this evidence that is being alleged that I'm now introducing into the record about this competitive disadvantage, this has been in the record from the beginning. I mean, there was an expert report submitting on this. It's at the appendix at page 140. It lays out how this tax will discriminate against non-residents and hurt them financially. That was not challenged by the Virgin Islands. They accepted it. In the undisputed record, they accepted it. It was presented to the district court. District court did not address it, and this court should have. So it is definitely an issue that can and should be raised on appeal, and we've raised it on appeal, and I think we've re-briefed the issue thoroughly. There was no waiver on that. So, Your Honors, I would just conclude with two points. First off, the—to make it easier, the Tax Injunction Act was waived. They did not raise it. They did not file a cross-appeal. They should have. It's not a subject matter jurisdiction issue. The district court found that there was not a just and speedy resolution in the Virgin Islands courts. That's a factual finding. That should have been appealed. It wasn't appealed. And second point I would make is, again, that the Supreme Court and this court has repeatedly said that you have to look at intent and effects of statutes, not what they say on their face, but what they actually do. And here, this statute both is intended to discriminate against non-residents and the effect of it is to discriminate against non-residents, and for that reason, it should be declared unconstitutional under the Commerce Clause. Thank you. Thank you very much, Mr. Hittinger. Thank you, Mr. Eaton. And thank you for indulging us electronically in this fashion. I look forward to the day when the court can see all of you face-to-face in a real courtroom. Thank you very much. We will take the case under advisement.